# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>KARNAIL S. BADHAN, GURMUKH S. BADHAN, KULDIP S. BADHAN, SUSHMA BADHAN, ASHA R. BADHAN, MEENA R. BADHAN, and BADHAN CORP, a Nevada corporation,<br><br>    Defendants. | 3:13-cv-00458-RCJ-WGC<br><br>ORDER |

This action arises out of Plaintiff Branch Banking and Trust Company's efforts to enforce a commercial guaranty. Pursuant to BB&T's request, the Clerk of the Court entered default on October 15, 2013. BB&T now moves for an entry of default judgment (ECF No. 14). For the reasons stated herein, the motion is granted.

## I.   FACTS AND PROCEDURAL HISTORY

In December 2005, B 2 KG LLC purchased the Carson City Inn and assumed, among other things, the obligations owed under a $1,687,500 promissory note (the "Note") now held by Plaintiff Branch Banking and Trust Company ("Plaintiff" or "BB&T"). (Compl. ¶¶ 23–24, Aug. 23, 2013, ECF No. 1). As part of the purchase agreement Defendants Karnail Badhan, Gurmukh Badhan, Kuldip Badhan, Sushma Badhan, Asha Badhan, and Meena Badhan (collectively, the "Badhans" or "Defendants") agreed to guaranty B 2 KG's obligations under the Note in a commercial guaranty (the "Guaranty"). (*Id.*). In December 2008, in connection with an extension

of the Note's maturity date, Defendant Badhan Corp agreed to serve as additional guarantor. (*Id.* ¶¶ 27–28).

When the Note matured on December 25, 2011, B 2 KG did not pay the indebtedness as promised. (*Id.* ¶ 33). Consequently, in March 2012, BB&T served a formal demand on B 2 KG and the Badhans.[1] (*Id.* ¶ 34). The Note provides that any event of default results in an automatic-default interest rate of 18% per annum. (*Id.* ¶ 36).As of November 1, 2013, the amount of indebtedness remaining unpaid on the Note is 1,703,897.67. (Harms Decl., ¶ 3, ECF No. 14-2).[2]

On August 23, 2013, BB&T filed its complaint against the Badhans, alleging breach of their guaranties. (Compl., ECF No. 1). BB&T served each of the Badhans on or before September 13, 2013. (LaForge Decl., ¶¶ 3–5, ECF No. 12-1, Exs. 1–7). On October 11, 2013, after the Badhans failed to timely answer the complaint or otherwise defend, BB&T requested entry of default against them. (Req. for Entry of Default, ECF No. 12). On October 15, 2013, the

---

[1] Both the complaint and the motion for entry of default allege that the formal demand was served in March 2011. (Compl., ¶ 34, ECF No. 1; Mot. Default J., ECF No. 14, at 4). This, however, appears to be a typographical error, as that note did not mature until December 2012. Therefore, the Court is left to assume that Plaintiff intended to allege that the demand was made in March 2012.

[2] The total outstanding indebtedness results from the following:

| | |
|---|---:|
| Principal | $1,389,062.18 |
| Accrued Interest | $214,429.62 |
| Late Charges | $2,100.00 |
| Real Property Taxes | $5,698.49 |
| Appraisal and Review Fees | $23,850.00 |
| Environmental Report | $4,800.00 |
| Attorney's Fees and Costs (prior to this action) | $45,399.62 |
| Title Fees | $6,191.58 |
| Receiver Fees | $12,187.94 |
| Locksmith Costs | $178.24 |
| **Total** | $1,703,897.67 |

(Harms Decl., ¶ 3, ECF No. 14-2).

Clerk of the Court entered the requested default. (Default, ECF No. 13). BB&T now moves for an entry of default judgment. (ECF No. 14). The Badhans have not responded or taken any other action to defend this case.

## II. DEFAULT JUDGMENT

Obtaining default judgment is a two-step process under Rule 55. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). The party seeking default judgment must then petition the court for a default judgment. *Id.* at 55(b)(2). "A grant or denial of a motion for the entry of default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A court may, "for good cause shown," set aside an entry of default. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (*citing Eitel*, 782 F.2d at 1471–72). After entry of default, well-pled allegations in the complaint regarding liability are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The plaintiff is required to prove all damages sought in the complaint, and those damages may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). If sufficiently documented

and detailed, damages claims may be fixed by an accounting, declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

In the instant case, the complaint sufficiently states a claim for breach of the guaranty. Defendants have neither answered nor otherwise responded to the complaint, and thus, the material facts are undisputed. Indeed, because the material facts may be easily verified with reference to the Note and other loan documents, it is unlikely that they could be reasonably disputed. Therefore, *Eitel* factors two, three, and five weigh in favor of the entry of default judgment. For the following reasons, the same is true of each of the remaining factors:

First, if the motion were denied, BB&T would be without a remedy due to Defendants' unexcused failure to defend. Declining to enter a default judgment would therefore result in prejudice to BB&T. Second, while the sum of money at stake, $1,703,897.67, is substantial, it is the exact amount that the Badhans agreed to repay under the present circumstances. Therefore, "because the court must consider the amount of money at stake in relation to the seriousness of [the d]efendants' conduct, " *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002), this factor favors granting default judgment. Third, it is unlikely that the default was the result of excusable neglect. This action was filed on August 23, 2013—a full five months ago—and all seven Defendants were properly served shortly thereafter. Each of these Defendants agreed to guaranty B 2 KG's obligations under the Note, and each is presumably aware of B 2 KG's default. Therefore, each Defendant is presumably aware of its outstanding obligations and is on fair notice of the instant action to enforce them. Fourth, although federal policy favors decisions on the merits, *Eitel*, 782 F.2d at 1472, the mere existence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Moreover, Defendants' failure to answer BB&T's complaint makes a decision

on the merits impractical, if not impossible. Under Federal Rule 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. Thus, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* Accordingly, considering each of the *Eitel* factors, the Court finds that the entry of default judgment is warranted. BB&T's motion is therefore granted.

### III.   ATTORNEY'S FEES AND COSTS

Pursuant to the terms of the Guaranty, Plaintiff requests attorney's fees in the amount of $9,085.95, and costs of suit in the amount of $770.77. (Mot. for Default J., ECF No. 14, at 6). While the breach of the Guaranty entitles Plaintiff to an award of reasonable attorney's fees and costs, Plaintiff must still show proof of the relief requested pursuant to Federal Rule 54 and Local Rules 54-1 through 54-16.

The Ninth Circuit affords district courts broad discretion in determining the reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The district court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the court decides whether to adjust the lodestar calculation based on an evaluation of the *Kerr* factors that are not already subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (explaining which *Kerr* factors are relevant to the initial lodestar determination). Here, the *Kerr* factors are not implicated.

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates in the forum community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (quoting *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)) (internal quotation marks omitted).

A motion for attorney's fees and related nontaxable expenses must be filed no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B). The motion must state the amount sought or provide a fair estimate. *Id.* Local Rule 54-16(b) further requires that the motion include the following components:

(1) A reasonable itemization and description of the work performed;

(2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15;

(3) A brief summary of the following:
    A. The results obtained and the amount involved;
    B. The time and labor required;
    C. The novelty and difficulty of the questions involved;
    D. The skill requisite to perform the legal service properly;
    E. The preclusion of other employment by the attorney due to acceptance of the case;
    F. The customary fee;
    G. Whether the fee is fixed or contingent;
    H. The time limitations imposed by the client or the circumstances;
    I. The experience, reputation, and ability of the attorney(s);
    J. The undesirability of the case, if any;
    K. The nature and length of the professional relationship with the client;
    L. Awards in similar cases; and,

(4) Such other information as the Court may direct.

Additionally, the motion must be accompanied by an affidavit from the attorney responsible for the billings in the case, authenticating the motion's contents and proving that the requested fees and costs are reasonable. LR 54-16(c).

     Here, BB&T's request for fees was timely filed pursuant to Fed. R. Civ. P. 54(d)(2)(B)(i). Further, BB&T has satisfied each of the applicable requirements set forth in Local Rule 54. (*See* Mot. for Default J., ECF No. 14, at 7–9; LaForge Aff., ECF No. 14-1). However, BB&T has not adduced evidence sufficient to support that entire $9,085.95 fee award requested. Instead, the submitted billing itemization/invoice, dated September 6, 2013, indicates a total of $7,015.95 in attorney's fees. (*See* Invoice, ECF No. 14-1, at 5). Accordingly, $7,015.95 is the maximum award available at this time. If, however, Plaintiff has incurred or later incurs additional fees in connection with this case, it is free to move for an adjustment.

     Plaintiff's billing records indicate that the $7,015.95 fee results from: (1) 2.5 attorney hours billed at an hourly rate of $450.00, (2) 1.2 attorney hours billed at an hourly rate of $415.00, (3) 19.2 attorney hours billed at an hourly rate of $275.00, and (4) 5.10 attorney hours billed at an hourly rate of $175.00, for a total of $7,795.50, less a discount of $779.55. In light of the nature of this case and Counsel's work, reputation, and experience, the Court finds that these rates and hours are reasonable. Plaintiff is therefore entitled to an award of fees in the amount of $7,015.95. Plaintiff is also entitled to an award of costs in the requested amount of $770.77.

## CONCLUSION

     IT IS HEREBY ORDERED that Plaintiff's motion for entry of default judgment (ECF No. 14) is GRANTED. Plaintiff is entitled to a default judgment in the amount of $1,703,897.67.

     IT IS FURTHER ORDERED that Plaintiff is entitled to an award of attorney's fees in the amount of $7,015.95 and costs in the amount of $770.77.

     IT IS SO ORDERED.

Dated:  April 23, 2014

                                                            _____  
                                                             ROBERT C. JONES  
                                                          United States District Judge